UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MELISSA RAE THOMAS,

                           Plaintiff,        **No. 6:15-cv-06629(MAT)**
                                             **DECISION AND ORDER**

              -vs-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                           Defendant.
_____

## INTRODUCTION

Represented by counsel, Melissa Rae Thomas ("Thomas" or
"Plaintiff") brings this action pursuant to Title XVI of the Social
Security Act ("the Act"), seeking review of the final decision of
Acting Commissioner of Social Security Carolyn W. Colvin ("the
Commissioner" or "Defendant") denying her application for Social
Security Insurance ("SSI"). This Court has jurisdiction over the
matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## PROCEDURAL STATUS

On March 8, 2012, Plaintiff protectively filed an application
for SSI alleging disability since February 2, 2012, due to bipolar
disorder and a back injury. (T.210-14, 249).[1] Following the denial
of her application, Plaintiff requested a hearing, which was
conducted by administrative law judge Connor O'Brien ("the ALJ") on
February 12, 2014, in Rochester, New York. (T.31-78). Plaintiff,

---

[1]
    Citations in parentheses to "T._" refer to pages from the certified
transcript of the administrative record.

who had the assistance of a non-attorney representative, appeared by phone because, at the time, she was incarcerated at the Monroe County Jail pursuant to an unspecified criminal charge. Vocational expert Julie Andrews ("the VE") also testified. On June 26, 2014, the ALJ issued a decision finding Plaintiff not disabled. (T.17-26). The Appeals Council denied Plaintiff's request for review on September 4, 2015, making the ALJ's decision the final decision of the Commissioner. (T.1-3). This timely action followed.

Plaintiff and Defendant have cross-moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Court adopts and incorporates by reference herein the comprehensive factual summaries provided by the parties in their supporting briefs. The medical and vocational evidence will be discussed in more detail below, as necessary to the Court's resolution of the issues presented on this appeal.

For the reasons that follow, the Commissioner's decision is reversed, and the matter is remanded for further administrative proceedings.

## THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process promulgated by the Commissioner for determining disability claims under the Act. See 20 C.F.R. § 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date. At step two, the ALJ found that

Plaintiff had the following "severe" impairments: adjustment disorder, bipolar disorder, substance abuse (in remission), degenerative disc disease of the lumbar spine at L5-S1 level with a disc protrusion, and a non-displaced fracture of the fifth digit on the left foot. (T.19). The ALJ found at step three that Plaintiff's impairments did not meet or medically equal any listed impairment set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. In particular, the ALJ considered Listings 1.02 (dysfunction of a major joint), 1.04 (disorders of the spine), 12.04 (affective disorders), and 12.09 (substance addiction disorders). (T.19-21).

Before proceeding to step four, the ALJ assessed Thomas as having the residual functional capacity ("RFC") to perform sedentary work, except that she must be able to change position every 30 minutes, for up to 5 minutes at a time, without leaving the work station. (T.21). While Thomas is unable to climb ropes, ladders, or scaffolds, she can occasionally stoop, crouch, climb stairs, kneel, crawl, and reach overhead bilaterally. (Id.). The ALJ limited Thomas to performing unskilled work, with occasional changes in her work setting; and to interacting with others at the Dictionary of Occupational Titles' "people function" levels of 6 (speaking/signaling), 7 (serving), and 8 (helping/taking instruction).[2]

---

[2]

Since "every job requires a worker to function, to some degree, in relation to Data, People, and Things[,]" the Dictionary of Occupational Titles ("DOT") has reserved "the fourth, fifth, and sixth digits of the occupational

-3-

Based on the VE's testimony, the ALJ found that a person with Plaintiff's vocational profile and RFC could perform jobs that existed in significant numbers in the national economy, such as label picker and order clerk. (T.25, 73). Accordingly, the ALJ found that Plaintiff was not under a disability as defined by the Act from March 8, 2012, the application date, through June 26, 2014, the date of the decision. (T.24-25).

## SCOPE OF REVIEW

When considering a claimant's challenge to the Commissioner's decision denying benefits under the Act, a district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation

_____

code [to] reflect relationships to Data, People, and Things, respectively." DOT (online version), Appendix B: Explanation of Data, People, and Things ("App. B"), available at http://www.occupationalinfo.org/appendxb_1.html (last accessed Nov. 28, 2016). Here, the ALJ identified three so-called "Worker Functions" in the limitations assigned to Plaintiff's RFC, namely, "Speaking-Signaling," "Serving," and "Taking Instructions-Helping." According to the DOT, "Speaking-Signaling" involves "[t]alking with and/or signaling people to convey or exchange information" and "[i]ncludes giving assignments and/or directions to helpers or assistants." DOT, App. B, http://www.occupationalinfo.org/appendxb_1.html. "Serving" entails "[a]ttending to the needs or requests of people or animals or the expressed or implicit wishes of people.  Immediate response is involved." Id.  "Taking Instructions-Helping" requires the worker to "[a]ttend[ ] to the work assignment instructions or orders of supervisor. . . ." Id.

-4-

omitted), but "defer[s] to the Commissioner's resolution of conflicting evidence." Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012) (citation omitted)). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)).

## DISCUSSION

### I.   Failure to Explain Weight Accorded to Consulative Psychologist Dr. Finnity's Opinion

Plaintiff argues that the ALJ erroneously failed to explain why portions of the opinion offered by Kavitha Finnity, Ph.D. were not incorporated into the RFC determination. Plaintiff notes that had the ALJ included the limitations assigned by Dr. Finnity regarding Plaintiff's ability to concentrate and maintain attention, Plaintiff would be unemployable.

On August 30, 2012, Dr. Finnity completed a Psychological Assessment for Determination of Employability regarding Plaintiff at the request of the Monroe County Department of Social Services ("MCDSS") (T.471-76). Dr. Finnity observed that Plaintiff was suffering from mood instability, depressed mood with symptoms of decreased energy and hopelessness, and manic episodes with symptoms of flight-of-ideas, impulsiveness, decreased need for sleep, and pressured speech. Plaintiff reported that her symptoms improved, and her mood stabilized, when on medication. She admitted to a

history of cocaine addiction for which she had undergone a substance abuse treatment program. On examination, Dr. Finnity found Plaintiff's judgment and insight to be abnormal, and noted that her IQ of 89 was in the low-average range. Plaintiff was diagnosed with bipolar disorder cocaine abuse in sustained remission. Dr. Finnity opined that Plaintiff had no limitation in following, understanding, and remembering simple instructions and directions; no limitation in performing complex tasks independently; no limitation in attending to a routine, maintaining a schedule, and performing low-stress and simple tasks. (T.474). Dr. Finnity further opined that Plaintiff's mental impairments would cause her to be "moderately limited," which the form defined as "unable to function 50% of the time," in regards to maintaining the attention and concentration necessary to complete rote tasks. (T.474). Dr. Finnity opined that Plaintiff could work for 20 to 30 hours a week, provided that she be permitted to attend treatment. (T.475-76).

The ALJ cited Dr. Finnity's August 30, 2012, opinion, "that, due to the claimant's psychiatric condition, she would have *moderate* limitations in attention and concentration." (T.23; emphasis supplied). The ALJ "g[a]ve this opinion some weight because it is generally consistent with the substantial medical evidence of record" and stated that the "above residual functional capacity provides limitations that reduce her distractions and

-6-

allow for a less than automated production pace." (Id.). As an initial matter, it is apparent that there is a disconnect between the ALJ's understanding of the term "moderate," which is not specifically defined in the Commissioner's regulations or the Act, and Dr. Finnity's understanding of that term as defined in the form she completed; as noted above, the MCDSS form defined "[m]oderately limited" as "[u]nable to function 50% of the time." (T.474). "The ALJ's decision to assign only 'some weight' is not, in itself, a mistake. The ALJ is free to discount the assessments of 'other medical sources' when making his determination[;] 'however the ALJ must explain that decision.'" Butler v. Colvin, No. 3:13-CV-00607 CSH, 2014 WL 7338856, at *19 (D. Conn. Dec. 22, 2014) (quoting Saxon v. Astrue, 781 F. Supp.2d 92, 104 (N.D.N.Y. 2011); citing Canales v. Comm'r of Soc. Sec., 698 F. Supp.2d 335, 344-45 (E.D.N.Y. 2010); Tolliver v. Astrue, No. 12-CV-042S, 2013 WL 100087, at *3 (W.D.N.Y. Jan. 7, 2013)). Here, because the ALJ and the medical expert whose opinion is being evaluated are evidently assigning very different meanings to key terms, the Court is unable to determine how the ALJ reconciled this discrepancy. Remand is required in order to obtain clarification on this issue from the ALJ.

With regard to the portion of Dr. Finnity's opinion that Plaintiff only could work or engage in other similar activities for 20 to 30 hours a week, the Commissioner argues that the ALJ was not

obligated to discuss this opinion pertained to an ultimate factual issue reserved to the Commissioner. The Second Circuit decision on which the Commissioner relies, <u>Brault v. Soc. Sec. Admin., Comm'r</u>, 683 F.3d 443, 448 (2d Cir. 2012), presented a distinguishable factual scenario. There, addressing a matter of first impression, the Second Circuit held that the ALJ was not required in his written ruling to state expressly his reasons for accepting a vocational expert's testimony, which the claimant challenged on grounds that the expert's methodology did not reliably match the job types in the DOT with other data showing employment numbers, so as to determine that the claimant could perform other work in the economy. The situation presented here is not the type of novel issue presented in <u>Brault</u> but rather concerns a straightforward application of the Commissioner's regulations regarding the obligation on the part of an ALJ to weigh all medical source opinions and explain the weight accorded to them. In any event, even disregarding Dr. Finnity's statement as to the number of hours per week Plaintiff could work, the portion of Dr. Finnity's opinion regarding the 50-percent diminishment in Plaintiff's ability to maintain concentration and attention did not impinge on an ultimate issue reserved to the Commissioner. Moreover, it provided a specific functional limitation regarding a critical work-related activity, i.e, the ability to maintain concentration, persistence, and pace. <u>See</u>, <u>e.g.</u>, <u>Karabinas v. Colvin</u>, 16 F. Supp.3d 206, 216

(W.D.N.Y. 2014) (reversing where ALJ failed to make the required detailed assessment of the claimant's mental RFC; although ALJ found that claimant had mild limitations in activities of daily living and social functioning and moderate difficulties in maintaining concentration, persistence, or pace, ALJ did not incorporate any of those limitations into his RFC assessment or into any of his hypothetical questions to VE, and did not conduct any analysis of how claimant's mental limitations affected his ability to function in a work-setting) (citing Stewart v. Astrue, 561 F.3d 679, 684 (7th Cir. 2009) (reiterating unpersuasiveness of argument that "the ALJ accounted for [the claimants's] limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks that do not require constant interactions with coworkers or the general public"); Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180–1181 (11th Cir. 2011) (holding that limiting claimant to simple, routine tasks or to unskilled work would not, standing alone, typically suffice to account for a claimant's moderate limitations in concentration, persistence, or pace)).

## II. Failure to Explain Weight Accorded to Consultative Psychologist Dr. Lin's Opinion

Plaintiff contends that the ALJ failed to explain why the report issued by consultative psychologist Dr. Yu-Ying Lin was not included in the RFC assessment. Plaintiff notes that Dr. Lin stated

that she could "not appropriately deal with stress," but the ALJ mischaracterized this statement in the decision denying benefits.

On May 15, 2012, Plaintiff was examined by Dr. Lin at the Commissioner's request. (T.325-28). Plaintiff reported a psychiatric hospitalization in 2010, due to hallucinations that she claimed were medication-induced. In terms of her current functioning, Plaintiff reported insomnia causing her to wake up about 5 times per night, decreased appetite, weight-loss of 50 pounds over the course of 7 months, dysphoric mood, psychomotor retardation, crying spells, loss of usual interests, irritability, loss of energy, social withdrawal, excessive worry, irritability, restlessness, difficulty concentrating. From 2002 to 2009, Plaintiff had a drug abuse problem; she attended a substance abuse treatment program from 2009 through 2010, in which she received psychiatric treatment. On examination, Dr. Lin observed that Plaintiff's clothes appeared to be somewhat dirty and she limped when she walked. Dr. Lin foiund that Plaintiff had a dysthymic mood and a full-range, appropriate affect; was oriented to time, person, and place; appeared to have intact concentration in that she could perform simple calculations and serial 3s; appeared to have impaired recent and remote memory skills due to anxiety in the evaluation and emotional distress secondary to pain; had average intellectual functioning; and fair insight and judgment. For the medical source statement, Dr. Lin opined that Plaintiff can follow

and understand simple directions and instructions; can perform simple tasks independently; can maintain attention and concentration; can maintain a regular schedule and learn new tasks; can perform complex tasks independently; can make appropriate decisions; can relate adequately with others; but "cannot appropriately deal with stress," and has "[d]ifficulties [which] are caused by stress-related problems." (T.327).

The ALJ summarized Dr. Lin's opinion as finding that Plaintiff "would have trouble dealing with stress, but would otherwise have no limitations in vocational functioning." The ALJ gave "this opinion some weight because it is somewhat consistent with the medical evidence of record" and stated that the RFC assessment incorporated the "credible mental limitations evidenced." (T.23). For the most part, the ALJ correctly summarized the limitations found by Dr. Lin; however, as Plaintiff points out, the ALJ altered Dr. Lin's categorical opinion that Plaintiff "*cannot* deal appropriately with stress" in such a way as to make it less restrictive (i.e., "*would have trouble* dealing with stress. . ."). The Commissioner argues that this is a distinction without a difference and notes that Dr. Lin stated that Plaintiff's psychiatric problems were not significant enough to interfere with her ability to function on a daily basis. As an initial matter, this reason was not offered by the ALJ at the administrative level, and the Court may not accept <u>post hoc</u> rationalizations offered by

the Commissioner to justify the ALJ's decision. See, e.g., Marthe v. Colvin, No. 6:15-CV-06436(MAT), 2016 WL 3514126, at *9 (W.D.N.Y. June 28, 2016) ("[T]he Commissioner asserts that Dr. Lurie's assessed limitations were not consistent with her actual abilities, the doctors' progress reports, and a physical therapist's note. However, . . . the rationales suggested by the Commissioner were not actually relied upon by the ALJ. This is improper[.]") (citations omitted); see generally Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168-69 (1962) ("The courts may not accept appellate counsel's post hoc rationalizations for agency action . . . . [A]n agency's discretionary order be upheld, if at all, on the same basis articulated in the order by the agency itself[.]") (quotation omitted).

Furthermore, Dr. Lin's opinion finding that Plaintiff cannot deal appropriately with stress is not necessarily at odds with Dr. Lin's statement that her psychiatric problems do "not appear to be significant enough to interfere with the claimant's ability to function on a daily basis." (T.328). The Commissioner has "recogniz[ed] that individuals with mental impairments may appear to function adequately in a restricted setting and yet be unable to meet the demands of competitive employment." Harris v. Colvin, 149 F. Supp.3d 435, 445 (W.D.N.Y. 2016) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 (C)(3)("[The Commissioner] must exercise great care in reaching conclusions about [the claimant's] ability

or inability to complete tasks under the stresses of employment during a normal workday or work week based on a time-limited mental status examination or psychological testing by a clinician, or based on [the claimant's] ability to complete tasks in other settings that are less demanding, highly structured or more supportive."); SSR 85-15, 1985 WL 56857, at *6 (S.S.A. Jan. 1, 1985) ("[T]he reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances. The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day. . . .Thus, the mentally ill may have difficulty meeting the requirements of so-called 'low-stress' jobs. . . ."). Remand is required to obtain clarification from Dr. Lin as to what context the doctor is referring to; Plaintiff may be able to "function on a daily basis" in a restrictive or isolated setting without significant interference from her psychiatric problems but the pertinent question is whether Plaintiff's psychiatric issues will interfere with her ability to function on a daily basis when faced with the normal stressors that arise in a typical competitive workplace environment.

### III. Physical RFC Determination Not Supported by Substantial Evidence

Plaintiff asserts that the physical aspect of the ALJ's RFC determination was not supported by substantial evidence because the ALJ disregarded the only medical expert opinions in the record (i.e., those from consultative physician Dr. Harbinder Toor) that assessed specific functional limitations, improperly relied on her own lay intuition, and erroneously gave controlling weight to a vaguely-stated opinion from consultative physician Dr. Elizama Montalvo.

On April 6, 2012, and again on August 1, 2012, Dr. Toor completed Physical Assessment for Determination of Employability forms for the MCDSS, in which he indicated that Plaintiff was "[v]ery limited," defined by the form  as "1-2 hours," in her ability to walk, stand, push, pull, and bend; and "[m]oderately limited," defined by the form as "2-4 hours," in her ability to sit. (T.468-69; 464-65). The ALJ gave Dr. Toor's reports "little weight," because "it [sic] was prepared for a different determination of employability, and is not directly applicable here[.]" (T.23). By focusing exclusively on the fact that he offered an opinion as to whether Plaintiff was temporarily precluded from working under whatever standard is applied by the MCDSS, the ALJ improperly ignored the portions of the reports where Dr. Toor provided specific functional limitations regarding important work-related activities, which was well within his

purview as a medical expert. The ALJ then pointed to Dr. Toor's "suggestion that [Plaintiff] would be unable to work for three to six months suggests a possible recovery that would preclude disability." The ALJ proceeded to characterize Dr. Toor's estimate that Plaintiff would be unable to participate in any activities except treatment or rehabilitation for 3 to 6 months as a "positive prognosis" which "suggests a lesser degree of impairment; one that is expected to respond to the conservative care." This reasoning is contradicted by the record, given that Dr. Toor completed consecutive reports giving the same opinions about the duration and extent of Plaintiff's limitations; his reports do not actually reflect "positive prognoses." Moreover, the reasoning is based purely on the ALJ's speculation and substitution of her lay opinion for a competent opinion by a medical expert. See, e.g., Sanchez v. Colvin, No. 14-CV-1008 MKB, 2015 WL 4390246, at *15 (E.D.N.Y. July 14, 2015) ("[T]he ALJ is not permitted to substitute her own lay opinion for that of an expert.") (citing Burgess v. Astrue, 537 F.3d 117, 131 (2d Cir. 2008)).

Finally, the ALJ found, without citation to any particular evidence, that Dr. Toor's opinion was "inconsistent with the medical evidence of record that shows that proper treatment reduces the claimant's pain and limitations therefrom." (T.24). However, the record indicates that Plaintiff's pain was not well-controlled with medication. Due to her history of substance abuse, she was not

permitted to take narcotic pain medications on a long-term basis. (T.364; primary care physician Dr. Arshad Masood "discontinued Xanax and Vicodin because of fear of addiction [since] patient is at high risk for dependence and addiction from these medications"). Thereafter, she reported that her pain was not controlled with the medication she was able to take. (T.366; informing James Vitale, FNP-BC she "feel[s] powerless due to chronic pain"). Plaintiff, on multiple occasions, went to the emergency room ("E.R.") due to uncontrolled pain symptoms. (T.484; 5/20/13, complaining of "throbbing" pain in right leg and "numb" left leg); (T.492; 6/2/13, reporting falling due to left leg giving out, resulting in increased back pain); (T.509; 9/21/13, progressively worsening lumbar pain with radiation to left leg over 2 days with now-constant pins-and-needles in left leg and numbness in right toes).

The ALJ gave "some weight" to the report of consultative orthopedist Dr. Montalvo, because it was "somewhat consistent with the medical evidence of record." After diagnosing Plaintiff with, among other things, low back pain with a history of degenerative disc disease, Dr. Montalvo opined that she "has mild to moderate limitations in bending, lifting, carrying, and reaching." Although the ALJ stated that only "some weight" was being given to Dr. Montalvo's report, it was weighed much more heavily than Dr. Toor's reports.  In contrast to Dr. Toor's reports, which contained specific opinions functional limitations, Dr. Montalvo's report was

phrased in unspecific terms ("mild to moderate") that courts in ths Circuit have found to be too vague to constitute substantial evidence to support an RFC. See Curry v. Apfel, 209 F.3d 117, 123-24 (2d Cir. 2000) (ordering remanding; stating that "[the consultative physician]'s use of the terms 'moderate' and 'mild,' without additional information, does not permit the ALJ, a layperson notwithstanding her considerable and constant exposure to medical evidence, to make the necessary inference that [the claimant] can perform the exertional requirements of sedentary work") (footnote and citation omitted); see also Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013) (remanding because consultative physician's opinion that claimant "should be able to lift . . . objects of a mild degree of weight on an intermittent basis" was "remarkably vague"; the meaning of the terms "mild" and "intermittent" was "left to the ALJ's sheer speculation"). Moreover, Dr. Montalvo did not provide *any* opinion regarding Plaintiff's limitations in the key activities required for sedentary work—sitting, standing, and walking—thus rendering her report incomplete.

## CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's decision contains errors of law and is not supported by substantial evidence. Accordingly, Defendant's Motion for Judgment on the Pleadings is denied; Plaintiff's Motion for

Judgment on the Pleadings is granted to the extent that the Commissioner's decision is reversed; and the matter is remanded for further administrative proceedings. In particular, the ALJ is directed to re-weigh the opinions of Dr. Finnity, Dr. Lin, Dr. Toor, and Dr. Montalvo in light of the regulations and caselaw discussed herein; to recontact Dr. Montalvo for clarification of her report; and to re-assess Plaintiff's RFC. The Court notes that this remand also presents the opportunity for the ALJ to obtain an RFC assessment from one or more of Plaintiff's treating sources, and the ALJ accordingly is directed to make such requests and supplement the record prior to reconsideration of Plaintiff's case.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**S/Michael A. Telesca**

HON. MICHAEL A. TELESCA
United States District Judge

Dated:      November 30, 2016
            Rochester, New York.